IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KIMBERLY COVARRUBIAS,

    Plaintiff,

v.                                                                                                  Civil Case No. 3:14-cv-157

CITIMORTGAGE, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion for summary judgment and motion for judgment on the pleadings. In Counts I and II of a five-count complaint, the plaintiff, Kimberly Covarrubias, alleges that CitiMortgage, Inc., wrongfully foreclosed on her house in violation of regulations promulgated by the Department of Housing and Urban Development ("HUD") and incorporated by reference into her Note and Deed of Trust. In Counts III and IV, Covarrubias says that CitiMortgage committed actual and constructive fraud by promising not to foreclose until certain events happened. In Count V, Covarrubias claims that CitiMortgage breached the implied covenant of good faith and fair dealing when it decided to foreclose.

All five claims fail. First, as to the breach of contract claims (Counts I, II, and V), no reasonable jury could find that CitiMortgage's actions proximately caused Covarrubias's default on her loan and the corresponding alleged damages. Further, Virginia law does not recognize an action for breach of the implied covenant of good faith and fair dealing in the circumstances of this case. As to the fraud claims (Counts III and IV), the record does not show the requisite

intent for a fraud claim, and it does not show reasonable reliance on any statements made to Covarrubias. Moreover, the fraud claims relate to representations about future events, which cannot form the basis of a claim of fraud.

Accordingly, the Court GRANTS CitiMortgage's motion for summary judgment on all counts.

## I. Statement of Facts[1]

In 2001, Kimberly Covarrubias purchased a home in Richmond, Virginia. At all relevant times, CitiMortgage held a Note and Deed of Trust on the property. At some point, Covarrubias decided to quit her job in order to stay at home with her children. Although she worked a few very brief temporary jobs, her then-husband made all the payments on her mortgage from December 2001 until they separated in 2011.

Covarrubias first became delinquent in her payments during 2010, and by January 2011 she needed to make up $2053.35, about three payments, to bring her loan current. In addition to being unemployed during this time, Covarrubias admits to using heroin beginning in January 2011. By May 2011, Covarrubias remained behind in her payments, and she accepted CitiMortgage's offer of a forbearance plan. This plan relieved her from making payments from November 2010 to May 2011, and required her to resume regular payments on May 13, 2011, and make three additional monthly payments of $150, ending on July 13, 2011.

---

[1] Summary judgment is appropriate when the movant establishes that there is no genuine dispute of any material fact and is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). The court must view the facts in the light most favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986), and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant," *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991). To defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

On July 11, 2011, CitiMortgage sent Covarrubias a letter as a "friendly reminder that your forbearance payment is due. Please remember, there is no grace period on your Forbearance agreement." (Dk. No. 1, Ex. D.) Nevertheless, Covarrubias failed to make the final $150 payment as required by the terms of the forbearance plan. On July 21, 2011, CitiMortgage sent a letter telling Covarrubias that her "mortgage account is still delinquent," and that the "agreement was that we would receive payment no later than 07/21/11." (Dk. No. 1, Ex. E.) The letter required immediate payment of the total amount past due, now $7723.24, to bring her mortgage current.

In early August 2011, CitiMortgage informed Covarrubias that it would not accept her late $150 payment and that she needed to seek an additional forbearance. Between August and November 2011, Covarrubias and CitiMortgage went back and forth via phone calls, letters, and faxes. CitiMortgage sent a letter dated November 1, 2011, indicating that Covarrubias had defaulted on her mortgage and owed at least $1325.69. On November 9, 2011, Covarrubias claims that one of CitiMortgage's representatives, "LaTonya," assured her that her foreclosure would not proceed until a loan specialist contacted her. Despite whatever "LaTonya" may have said, CitiMortgage authorized a foreclosure sale of her home, which occurred on November 17, 2011.

## II. Discussion

### A. Breach of Contract Claims

#### 1. Incorporated Terms

In order to prevail on a claim for a breach of contract under Virginia law, a plaintiff must show "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the

breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610 (2004). Regarding causation, "a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted." *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 181, 630 S.E.2d 304 (2006). A plaintiff bears "the burden of proving that its damages were proximately caused by wrongful conduct." *Id.* (quoting *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.*, 247 Va. 187, 190, 440 S.E.2d 606 (1994)) (internal quotation marks omitted).

Covarrubias's Note and Deed of Trust incorporate by reference certain HUD regulations. The Note states that the lender may require "immediate payment in full of the principal balance remaining due and all accrued interest," "except as limited by regulations of the [HUD] Secretary in the case of payment defaults." (Dk. No. 1, Ex. A at 2.) The Deed of Trust states that "[t]his Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the [HUD] Secretary." (Dk. No. 1, Ex. B at 5.)

HUD's regulations incorporated into the Note and Deed of Trust require that the "mortgagee [lender] must have a face-to-face interview with the mortgagor [borrower], or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid," or within thirty days of default on a repayment plan or thirty days before foreclosure. 24 C.F.R. § 203.604. In addition, a lender "must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to [HUD]," such as deeds in lieu of foreclosure, pre-foreclosure sales, partial claims, assumptions, and special forbearances. *Id.* § 203.501. Similarly, before four full monthly installments due become unpaid, a lender must "evaluate on a monthly basis all of the loss mitigation techniques . . . to determine which is appropriate." *Id.* § 203.605(a). Covarrubias says that CitiMortgage did not follow these required steps.

The failure to follow the regulations, however, had no role in any losses suffered by the plaintiff. Rather, Covarrubias's own actions caused the foreclosure and any resulting damages.

The material facts in this case lead inevitably to this conclusion. First, Covarrubias defaulted twice on her mortgage payments, both in late 2010 and under her special forbearance plan in July 2011. The final missed payment under the plan amounted to only $150, yet Covarrubias failed to timely pay even that minimal sum. Second, by January 2011, she had fallen behind by over $2000, and by July 2011, she needed to pay over $7000 to bring her loan current. Third, Covarrubias had not worked more than four months in the ten years prior to her foreclosure. Despite her awareness that she had defaulted on her loan in late 2010, she made no effort to seek full- or part-time employment from January 2011 through the time that her foreclosure occurred in November 2011. Fourth, Covarrubias admitted to using heroin beginning in January 2011, a time period which clearly coincides with the start of her financial troubles with CitiMortgage. Fifth, CitiMortgage provided a special forbearance plan from January until May 2011, which gave Covarrubias additional months to address her default and seek employment. In light of these facts, no reasonable jury could find that CitiMortgage's violations of HUD regulations requiring a face to face meeting proximately caused Covarrubias's damages.[2]

In conclusory fashion, Covarrubias also alleges that CitiMortgage failed to comply with the loss mitigation regulations. She does not specify how CitiMortgage violated those

---

[2] *See Rourk v. Bank of Am. Nat'l Ass'n*, No. 4:12CV42, 2013 WL 5595964, at *6 (M.D. Ga. Oct. 11, 2013) ("Even if Defendant had not substantially complied with the requirement that it make a reasonable effort to arrange a face-to-face meeting with Plaintiff, it was Plaintiff's failure to tender a single payment for nearly two years that caused her default status and the foreclosure. Therefore, even if Plaintiff had demonstrated that Defendant failed to make a reasonable effort to arrange a face-to-face meeting with her, she has not established that such a failure caused her any damages.").

regulations, or what CitiMortgage should have done. Equally important, she does not say how any mitigation measure would have affected her losses. In any event, the mitigation measures are designed to cut HUD's losses, not the borrowers. 24 C.F.R. § 203.501. Covarrubias has not alleged facts justifying a plausible conclusion that the failure to engage in mitigation proximately caused damages to her.

Accordingly, the Court GRANTS the defendant's motion for summary judgment on Counts I and II.

*2. Implied Covenant of Good Faith and Fair Dealing*

Contracts governed by Virginia law contain an implied covenant of good faith and fair dealing. *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998). "[A] party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." *Id.* at 542. Covarrubias argues that CitiMortgage breached the covenant of good faith and fair dealing by foreclosing despite alleged assurances that it would not do so.

Express contractual terms, however, trump the implied covenant. "[T]he duty of good faith does not prevent a party from exercising its explicit contractual rights." *Id.* "[I]n Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 385, 493 S.E.2d 516 (1997). An implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that otherwise do not exist." *Id.* (citations omitted); *see also Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (finding no violation of the implied covenant of fair dealing because the plaintiff conceded that the defendant could terminate purchase orders "for any reason without penalty upon written notice" and stating that the plaintiff "cannot now attempt to rewrite the

purchase orders to amend a term that proves unfavorable to [it]" (citations omitted)). A party, therefore, does not breach implied duties when it exercises its rights created under the contract. CitiMortgage had the explicit right to foreclose and sell Covarrubias's home to a third party when she failed to make her mortgage payments.

CitiMortgage argues, as it did regarding the incorporated terms, that any alleged breach of the implied covenant did not proximately cause Covarrubias's alleged damages. For the reasons set forth in the previous section, no reasonable jury could find that CitiMortgage's breach of the implied covenant in the Note and Deed of Trust proximately caused Covarrubias's damages. Instead, Covarrubias's own actions caused her to default on her loan and eventually lose her home.

This case may be easily distinguished from one cited by Covarrubias, where the court allowed a claim to proceed that alleged a breach of the implied covenant. *Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:12CV670, 2012 WL 5404084 (E.D. Va. Nov. 5, 2012). The facts in *Bourdelais* differ significantly from those in the present record. Most notably, the *Bourdelais* plaintiffs had not already defaulted on their mortgage at the time they requested a loan modification. *Id.* at *1. Their lender incorrectly instructed them to miss payments in order to qualify for a modification, thus actively inducing the *Bourdelais* plaintiffs to breach their payment obligations to their lender. *Id.*

In contrast to *Bourdelais*, no reasonable jury could find that a breach of the implied covenant proximately caused Covarrubias's alleged damages. Covarrubias not only defaulted on the original terms of her loan absent any erroneous instruction from CitiMortgage, she also defaulted under her special forbearance plan. Indeed, the fact that CitiMortgage agreed to a

special forbearance plan for a borrower who had not held a steady job in nearly a decade undercuts any claim of bad faith and unfair dealing.

The Court GRANTS the defendant's motion for summary judgment as to Count V, alleging a breach of the implied covenant of good faith and fair dealing.

### B. Fraud Claims

#### 1. Actual Fraud

To prove a claim for actual fraud, a plaintiff must show that the defendant made a false material representation "with the intent to mislead," *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316 (2005), or with "reckless abandon and disregard for the truth," *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Bradley v. Tolson*, 117 Va. 467, 85 S.E. 466 (1915)). A fraud plaintiff must also show that his reliance on the misrepresentation was "reasonable and justified." *Hitachi Credit*, 166 F.3d at 629 (citations omitted). Furthermore, a claim of fraud must deal with "the misrepresentation of present pre-existing facts, and it cannot ordinarily be predicated on unfulfilled promises or statements as to future events," *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 362, 669 S.E.2d 483 (2010), unless such promises are made "with a present intention not to perform them," *Lloyd v. Smith*, 150 Va. 132, 147, 142 S.E. 363 (1928). Covarrubias cannot show any of these elements.

Covarrubias alleges that CitiMortgage committed actual fraud when its representative told the plaintiff that the bank would delay foreclosure, but her actual fraud claim fails in at least three ways. First, she has no proof of the requisite intent. The communications between CitiMortgage and Covarrubias do not show either the intent to mislead or reckless abandon and disregard for the truth. When asked during her deposition whether she had "any evidence that [CitiMortgage representative] LaTonya intended to mislead you," Covarrubias responded with a

8

clear "No." (Dk. No. 27, Ex. 1 at 66.) By the time that Covarrubias spoke with "LaTonya" on November 9, 2011, CitiMortgage had already communicated several times that foreclosure would result if Covarrubias failed to keep her payments current. The letter to Covarrubias outlining the terms of her forbearance plan on May 4, 2011, stated that "C[itiMortgage] wishes to assist Borrower, but does not wish to discontinue collections (and/or foreclosure, if applicable), until the loan is brought current." (Dk. No. 1, Ex. 6 at 2.) This letter further stated that "[i]n the event Borrower does not make all payments under this agreement C[itiMortgage] will proceed with collections (and/or foreclosure, if applicable), without further notice, except as required by applicable law." *Id.* In a letter dated August 10, 2011, several weeks after Covarrubias defaulted on her forbearance plan payments, CitiMortgage stated that "[i]n addition, we are unable to suspend collection or foreclosure activity until such time that a loan workout has been completed." (Dk. No. 1, Ex. 11 at 2.) Although the parties communicated several times between August 10 and November 17, 2011, they never reached an agreement for a second forbearance plan for Covarrubias. CitiMortgage, therefore, could foreclose at any time, and told Covarrubias that it would do so. None of this adds up to intent to defraud.

Second, these communications show that Covarrubias could not have relied upon "LaTonya's" alleged statement that CitiMortgage would defer foreclosure. In fact, they provided unmistakable notice that foreclosure was on the way. "It should come as no surprise to a homeowner that the lender may seek to foreclose on her home when she fails to make payments." *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 344 (4th Cir. 2013).

Finally, the Court notes that the alleged fraud is, at best, a promise or statement about a future event. The conversation with Covarrubias occurred on November 9, 2011, and CitiMortgage initiated foreclosure on November 17, 2011. As noted above, the record does not

support any reasonable inference of fraudulent intent by CitiMortgage's representative that would indicate a "present intention not to perform" at the time she made those statements to Covarrubias. *Lloyd v. Smith*, 150 Va. at 142.

### 2. Constructive Fraud

Covarrubias argues in the alternative that "LaTonya's" alleged assurance amounted to constructive fraud. Constructive fraud includes all the elements of actual fraud, except that a plaintiff must only show that the defendant made a misrepresentation of material fact innocently or negligently, rather than with actual fraudulent intent. *Hitachi Credit*, 166 F.3d at 628. "The essence of constructive fraud is negligent misrepresentation." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344 (1998). "Tort law is not designed, however, to compensate parties for losses suffered as a result of breach of duties assumed only by agreement. . . . [Such compensation] remains the particular province of the law of contracts." *Sensenbrenner v. Rust, Orling & Neale Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55 (1988).

As discussed above, the plaintiff cannot establish reasonable reliance on the alleged statement. The previously discussed facts demonstrate that she could not have reasonably relied on any statement by "LaTonya."

A party claiming constructive fraud in the context of a contractual relationship must show either a duty existing outside of the scope of the contract or fraud in the inducement of the contract. *Id.* at 558, 560. Covarrubias cannot show either. The terms of the Note and the Deed of Trust set out the rights and obligations of both parties. Covarrubias's alleged damages arise solely out of her contractual relationship with CitiMortgage. She does not allege any fraudulent inducement through misrepresentations prior to the formation of the loan agreement, which, in fact, predates the assignment of the Note to CitiMortgage.

10

Accordingly, the Court GRANTS the defendant's motion for summary judgment as to the actual and constructive fraud claims in Counts III and IV.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the defendant's motion for summary judgment as to all Counts.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: December 8, 2014
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge